# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ARMADILLO DISTRIBUTION
ENTERPRISES, INC., a Florida corporation,

    Plaintiff,

v.                                                                  CASE NO: 8:09-cv-466-T-30MAP

CLAVIA DMI AB, a Swedish corporation,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Clavia's DMI AB's ("Defendant") Dispositive Motion to Dismiss and Incorporated Memorandum of Law (Dkt. #12), and Plaintiff Armadillo Distribution Enterprises, Inc.'s ("Plaintiff") Opposition (Dkt. #16). On October 8, 2009, the Court held an evidentiary hearing on Defendant's Motion to Dismiss. The Court, having considered Defendant's Motion, Plaintiff's Memorandum in Opposition, the testimony of Jason Stanfield and Tomas Enochsson, and having considered the parties' arguments at the hearing, concludes that Defendant's Motion to Dismiss for lack of personal jurisdiction and non conveniens (Dkt. #12) should be denied.

## BACKGROUND

Plaintiff, a Florida corporation, distributes musical instruments to dealers throughout the United States. Defendant, a Swedish corporation, manufactures musical instruments under the brand name "Nord" (the "Product"). Plaintiff brings this action seeking monetary

damages arising from Defendant's unlawful and inequitable retention of benefits conferred by Plaintiff.

The allegations in Plaintiff's Complaint arise from an oral distribution contract established between the parties in 1995, whereby Plaintiff would serve as the exclusive distributor of Defendant's Product in North America.[1] The parties first met at a trade show in Frankfurt, Germany, in approximately 1995. The business arrangement between the parties was negotiated over the telephone and never took written form, but "the parties acted in accordance with a well specified series of terms, as documented in the written communications between the parties over the lengthy time...." (Complaint, pg. 3). The record reflects that throughout the parties' relationship, Plaintiff would purchase the Product directly from Defendant in Sweden, the Product would be shipped at Plaintiff's arrangement and expense to Plaintiff in Florida, and then Plaintiff would promote and distribute the Product throughout North America. Plaintiff was also responsible for the maintenance of the Product under warranty and paid for all marketing and promotion of the Product for the North American market.

From 1995 until the termination of the relationship in January 2009, Plaintiff distributed the Product within the United States. Between August 2001 and January 2009, Defendant shipped over thirty-five thousand units of the Product, worth over $25,500,000, to Plaintiff for distribution. During the parties' thirteen-year business relationship,

---

[1] In 2008, the exclusive distribution territory was reduced to the United States.

Defendant traveled to Florida four times[2]. Jason Stanfield ("Stanfield"), Plaintiff's Nord Product Manager, testified that he spoke with Defendant multiple times daily, via phone calls, emails, and fax. Stanfield also stated that when a customer sent an email to Defendant regarding the Product, the email would be routed directly to Plaintiff. Stanfield testified that Defendant had input and control over Plaintiff's marketing of the Product. Specifically, Defendant provided input regarding the marketing of the Product and the display of the Product at Plaintiff's headquarters in Tampa. At some point in the relationship, Defendant also wanted Plaintiff to hire an additional employee in Tampa. Defendant also provided input regarding Plaintiff's marketing of the Product at trade shows. Although no trade shows occurred in Florida, Defendant assisted in the planning of the trade shows and, on at least one occasion, told Plaintiff that it wanted a larger booth.

Enochsson testified that he visited Plaintiff in Florida on three occasions. At the first meeting, he toured Plaintiff's facility, discussed marketing, and made remarks/suggestions regarding the Product. Plaintiff was also informed that Defendant did not want Plaintiff to sell the Product in Canada anymore. At some point, Enochsson requested sales data from Plaintiff regarding the Product. In 2008, Enochsson presented complaints to Plaintiff that suggested that Defendant wanted Plaintiff to exert more resources toward the promotion and sale of the Product. Plaintiff subsequently took steps to comply with the Defendant's demands and spent additional resources in an effort to satisfy Defendant, including hiring an

---

[2] Three of those visits were by Tomas Enochsson ("Enochsson"), the International Sales Manager for Defendant, which will be discussed in more detail herein.

in-house technician to repair and re-merchandise defective Nord Products. During Enochsson's final visit in November 2008, Enochsson discussed the termination of the parties' relationship. Defendant then terminated the relationship in January 2009.

The record reflects that Defendant does not have an office in Florida, is not licensed to do business in Florida, does not have employees in Florida, does not receive mail in Florida, and does not have any property in Florida. Defendant did have the Nord trademark registered with the United States Patent and Trademark Office.

Plaintiff alleges that throughout the parties' thirteen-year relationship, Plaintiff expended substantial financial and other resources toward the promotion and sale of the Product. Due to the termination of the parties' business arrangement, Plaintiff claims it is now unable to recoup the costs and expenses it has sustained. Plaintiff therefore asserts that it would be inequitable for Defendant to retain the benefits it has received from Plaintiff's labor, expertise, and services in connection with the business development, brand expansion, and dealer network expansion of the Product.

## DISCUSSION

### I. Burden of Proof

A plaintiff bears the initial burden of proving personal jurisdiction by alleging facts that bring the defendant within the parameters of the Florida long-arm statute. See Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996). The Court must accept the facts alleged in the complaint as true. Where conflicting evidence exists, the facts must be viewed in a light most favorable to the plaintiff. See Future Technology Today, Inc.

v. OSF Healthcare Systems, 218 F.3d 1247, 1259 (11th Cir. 2000) (per curiam); United States SEC v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997). If the plaintiff provides facts sufficient to establish personal jurisdiction, the burden shifts to the defendant to challenge the plaintiff's allegations by means of affidavits or other evidence. See Future Technology Today, 218 F.3d at 1249. If the defendant provides sufficient support to meet its burden then the burden shifts back to the plaintiff who must then validate its jurisdictional allegations with affidavits, testimony, or documents. See id.

**II.     Defendant's Motion to Dismiss for Lack of Personal Jurisdiction**

To determine if the court has personal jurisdiction over a foreign manufacturer, as in this case, the Federal courts apply a two-part test. The first prong of the test requires the court to determine if jurisdiction exists under the forum state's long-arm statute. See Sculptchair, 94 F.2d at 626. The second prong requires the court to examine whether the exercise of personal jurisdiction over the foreign defendant satisfies the due process requirement. First, it must be determined that the defendant has sufficient "minimum contacts" with the forum state. Next, it must be decided whether the exercise of jurisdiction would offend "traditional notions of fair play and substantial justice." International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement, 326 U.S. 310, 316 (1945).

Florida's Long-Arm Statute, § 48.193(1)(a), (2) states, in relevant part:

> (1)(a) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself... to the jurisdiction of the courts of this

state for any cause of action arising from... [o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(2) "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

To establish minimum contacts, the defendant's contacts with the forum state must satisfy three criteria. See Vermeulen v. Renault, 985 F.2d 1534, 1546 (11th Cir. 1993). "First, the contacts must be related to the plaintiff's cause of action or having given rise to it." Id. "Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum..., thus invoking the benefits and protections of its laws." Id. "Third, the defendant's contacts with the forum must be such that [the defendant] should reasonably anticipate being haled into court there." Id. (internal quotations omitted).

The record reflects sufficient facts to bring Defendant within the parameters of Fla. Stat. § 48.193 (1)(a)'s, "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Plaintiff's cause of action in this case arises out of the contacts Defendant had with the state of Florida during the course of the parties' business arrangement. Plaintiff is seeking monetary damages for the resources it put forth to market and promote the Product in the United States.

In order to establish that Defendant was carrying on a business or business venture in the forum state, either itself or through an agent, "the activities of the [defendant] sought to

be served... must be considered collectively and show a general course of business activity in the State for pecuniary benefit." Sculptchair, Inc., 94 F.3d at 627 (citing Dinsmore v. Martin Blumenthal Associates, Inc., 314 So. 2d 561, 564 (Fla. 1975)). In Sculptchair, the Eleventh Circuit examined the kinds of activities that fulfill the "carrying on a business" requirement. There, the court concluded that a defendant was engaged in a "general course of business" when she acted as an independent contractor and occasional sales representative for a Canadian company, for which she circulated a price list, gave product presentations, completed three to five transactions, and forwarded orders from customers to the main office in Canada. Sculptchair, 94 F.3d at 627. The court did not conclude that the other defendants were "carrying on a business or business venture" in Florida when they engaged in a series of telephone conversations, a meeting to facilitate a contract, and several brief logistical meetings. Id.

Although the Defendant in the instant case made only four trips to the forum state, its influence over the marketing and sale of Nord Products and its close relationship with the resident corporation between 1995 and 2008, viewed collectively, rises to the level of business activity found to support specific jurisdiction under *Section 1(a)*. Before the parties entered into this distribution contract, Nord Products were not available in the United States. Defendant introduced the Product into the United States' stream of commerce through its arrangement with Plaintiff. Defendant exercised a certain degree of control over Plaintiff's marketing of the Product and Plaintiff adjusted the marketing and handling of the Product based on these demands. For example, Defendant influenced how Plaintiff marketed its

product at trade shows, including making suggestions on the size of Plaintiff's booth and the visibility afforded therein for its product. Defendant also told Plaintiff that it could not distribute the Product to Canada anymore. The extent of the relationship is also apparent by the fact that the parties communicated daily and Defendant automatically routed emails it received from the United States to Plaintiff in Florida. The Court also finds it significant that Defendant had the Product registered with the United States Patent and Trademark office.

Although the Court considers this is a close call, it concludes these activities are sufficient to constitute carrying on business in the United States, with the most contact having been made in the forum state. Specifically, such activities rise to the level of "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state" as required by Fla. Stat. § 48.193(1)(a).

Plaintiff further asserts that there is personal jurisdiction over the Defendant based on general jurisdiction pursuant to Fla.Stat.§ 48.193(2). Because the Court concludes that jurisdiction exists under Fla.Stat.§ 48.193(1)(a), it is not necessary to address whether the Defendant is subject to general jurisdiction in the forum state.

The Court also concludes that the record reflects that Defendant possesses sufficient minimum contacts with the forum to satisfy the due process requirement and to satisfy "traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316, 66 S. Court. at 158. The contacts that Defendant had with the forum state are intimately connected with Plaintiff's cause of action. Plaintiff's claim arises out of the resources it expended in an effort to promote Defendant's Product in the United States. With

approximately thirty percent of its worldwide sales being sent to Florida for distribution, the Defendant's contacts with the forum state justify haling it into a Florida court.

The record reflects that Defendant purposefully availed itself of the privilege of conducting business in Florida by introducing its product into the United States' stream of commerce by means of a Florida corporation. This is not a case like World-Wide Volkswagen, in which the manufacturer put its product into the "stream of commerce" with no expectation that it would ever enter the forum State. World-Wide Volkswagen, 444 U.S. 289, 100 S. Court. at 563 (1980). Due process requires that a defendant has "fair warning" that a particular activity may subject it to the jurisdiction of a foreign sovereign. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Court. 2174, 2181, 85 L. Ed. 2d 528 (11th Cir. 1990). By establishing an exclusive distributorship with the Plaintiff, the Defendant could reasonably expect the possibility of ensuing litigation in a Florida court. See also Sloss Industries Corp. v. Eurisol, 488 F.3d 922 (11th Cir. 2007). Moreover, the fact that title to the Product was passed to Plaintiff in Sweden, rather than in the forum state, does not affect the degree of contacts between Defendant and the forum. See Vermeulen, 985 F.2d at 1548.

Having determined that Defendant has sufficient minimum contacts with the forum, it must next be considered whether the exercise of personal jurisdiction over Defendant comports with notions of "fair play and substantial justice." International Shoe, 326 U.S. at 320, 66 S. Court. at 160. Factors that are relevant to this analysis include "the burden on the defendant, the interests of the forum..., and the plaintiff's interest in obtaining relief." Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 113, 107 S. Court. 1026,

1032, 94 L. Ed. 2d 92 (1987). <u>Asahi</u> points out that a "unique burden[] [is] placed upon one who must defend oneself in a foreign legal system...." <u>Id.</u> at 114, 107 S. Court. at 1033.

Defendant would face a large burden by being forced to litigate overseas. However, given the circumstances of this case, the burdens placed on Defendant is counterbalanced by Florida's interest in protecting resident corporations from being taken advantage of by foreign entities. Defendant benefitted from the business arrangement it had with the Florida corporation, and it is through this relationship that the Product was introduced into the United States' stream of commerce. Plaintiff is seeking restitution for resources it expended in its effort to sustain the business relationship between itself and the foreign corporation. Therefore, the exercise of personal jurisdiction over Defendant does not offend traditional notions of fair place and substantial justice. <u>See Asahi</u>, 480 U.S. at 114, 107 S. Court. at 1033.

**III.    Defendant's Motion to Dismiss under the Doctrine of Forum Non Conveniens**

Having determined that personal jurisdiction exists, this Court will next address the question of forum non conveniens. A party moving to dismiss on the basis of forum non conveniens must show: "that (1) an adequate alternative forum [is] available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff could reinstate [its] suit in the alternative forum without undue convenience or prejudice." <u>King v. Cessna Aircraft Co.</u>, 562 F.3d 1374, 1381 (11th Cir 2009) (quoting <u>Leon v. Millon Air, Inc</u>., 251 F.3d 1305, 1310-11 (11th Cir. 2001)).

The defendant bears the burden of demonstrating that an adequate alternative forum exists. King, 562 F.3d at 1382. Here, Defendant resides and/or conducts business in Sweden. Defendant argues that an adequate alternative forum exists in Sweden, but supports this with conclusory statements and fails to provide sufficient evidence to demonstrate the availability of the Swedish forum. Defendant has previously commenced an action in Sweden seeking a declaration as to which law applies, but states that the action was dismissed for "procedural reasons."

In weighing the private interest factors, a "plaintiff's choice of forum should rarely be disturbed." Id. (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Court. 839, 91 L. Ed. 1055 (1947)). In this case, Plaintiff is a Florida corporation who has brought suit in its home forum. A plaintiff's choice of forum is strongly favored when the plaintiff is a United States citizen, resident, or corporation. See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F. 3d 1097, 1101 (11th Cir. 2004). Other relevant factors weighing on the choice of forum include the "relative ease of access to sources of proof," availability of obtaining witnesses, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." Gilbert, 330 U.S. at 508.

Defendant's contention that "everything connected with this case happened in Sweden" is not supported by the record. Much of the evidence relating to this cause of action is in Florida. Plaintiff is claiming that Defendant is unjustly enriched from the resources Plaintiff expended during the thirteen-year distributorship to promote the Product in the United States. Plaintiff's records and evidence concerning the value of Plaintiff's labor,

expertise, and services in connection with the business development, brand expansions, and dealer network expansion would be obtained in Florida.

The relevant public factors include each of the forum's interest in hearing the case, the administrative burdens posed by hearing the case, and the need to apply foreign law. See Gilbert, 330 U.S. at 508-509, 67 S. Court. at 843. Defendant asserts that Sweden has a strong interest in deciding the dispute. Defendant points out that although Plaintiff is a Florida corporation, it sold the Product throughout the United States and Canada. However, the Product was introduced into the United States' stream of commerce through the state of Florida and the forum state has a strong interest in resolving disputes involving a resident corporation. "There is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction." SME Racks, Inc., 382 F.3d at 1104. Also, Defendant has failed to demonstrate that Swedish law applies or is at issue in this case.[3]

Accordingly, Defendant has not met its burden of demonstrating that the balance favors dismissal or that this suit can be reinstated in an alternate forum without undue inconvenience or prejudice to Plaintiff. Both the private and public factors weigh in favor of Florida as the proper forum.

---

[3] However, the parties have not requested the Court to determine which law applies and the Court makes no determination, at this point, which law should apply in this case.

## CONCLUSION

For the foregoing reasons, the Court concludes that, although the issue of personal jurisdiction presents a close call, the record reflects sufficient facts to assert personal jurisdiction over Defendant. The Court also denies Defendant's claim for forum non conveniens.

It is therefore ORDERED and ADJUDGED that:

1. Defendant's Motion to Dismiss (Dkt. #12) is hereby **DENIED**.

2. Defendant shall file an answer to Plaintiff's Complaint within ten (10) days from the date of this Order.

**DONE** and **ORDERED** in Tampa, Florida on October 28, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Even\2009\09-cv-466.mtd 12.wpd